IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03291-MSK-MEH

WYATT T. HANDY, JR.,

      Plaintiff,

v.

PATRICIA GUERRERO-DIAZ,
KELLY LEHMAN, and
S. BROWN,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion to Dismiss [filed March 17, 2015; docket #24].

Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred

to this Court for recommendation.  Docket #27.  The Court finds that oral argument would not

materially assist in the adjudication of the motion.  For the reasons that follow, this Court

respectfully recommends that Defendants' motion be **granted in part** and **denied in part**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 as a *pro se* litigant incarcerated in the Cheyenne Mountain Re-Entry Center ("CMRC") in Colorado Springs, Colorado.  Plaintiff filed the operative complaint on December 26, 2014.  Amended Complaint, docket #7.

### I.      Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On July 11, 2014, Plaintiff – an incarcerated person – was placed at CMRC, a Positive Peer Community ("PPC") based on religion.  Amended Complaint at 4, ¶¶ 7-8.  Plaintiff asserts that Defendants are employees of Community Education Centers ("CEC"), a private contractor that runs programming at CMRC through the Colorado Department of Corrections ("CDOC").  *Id*. at 3, ¶ 1.  Upon his arrival at CMRC, staff required Plaintiff to sign a contract and to participate against his will in programming "of a religious nature."[2]  *Id*. at 5, ¶ 13.  If he did not sign the contract agreeing to the program, Plaintiff alleges he was told that he would be placed in disciplinary segregation, held in non-compliance, and given a misconduct report.  *Id*.  Specifically, Plaintiff alleges that the PPC program included a "set of cardinal rules modeled after the Ten Commandments" and a "prayer called a credo" that Defendants forced him to stand up and recite twice daily.  *Id.* at 4-5, ¶¶ 9, 12.  Plaintiff asserts that the program was "founded by Christians and has Christian principles that are being forced on the Plaintiff unwillingly."  *Id.* at 6, ¶ 27.

---

[2]Plaintiff's claim does not indicate that any of the Defendants forced the contract to be signed but that he "was forced to sign a contract."  Docket #7 at 5.

Plaintiff alleges that on October 21, 2014, he refused to participate and received a "learning experience" as punishment. *Id*. at 5, ¶ 20.  When Plaintiff on October 31, 2014, submitted a request to Defendant Patricia Guerrero-Diaz (his case manager at CMRC) requesting a copy of the contract Plaintiff had signed, Plaintiff claims Guerrero-Diaz denied knowledge of such a contract and did not provide it to Plaintiff. *Id*. at 5, ¶ 21.  When Plaintiff on November 3, 2014, submitted a complaint about the religious nature of the program to Defendants Kelly Lehman (his unit manager at CMRC) and S. Brown[3] (the program director at CMRC) and requested to be moved to another facility, Plaintiff asserts that those Defendants told him that the program was not based on religion and refused to move him. *Id*. at 5, ¶ 22.

On November 4, 2014, Plaintiff again requested to be moved and made his religious objections known to Guerrero-Diaz, who Plaintiff claims responded by saying the only way out is to refuse the program, which would result in receiving a misconduct report and being put in segregation. *Id*. at 5, ¶ 23.  Finally, on November 7, 2014, Plaintiff again submitted a similar complaint and request to Guerrero-Diaz and alleges he received the same response. *Id*. at 6, ¶ 24. Plaintiff claims theses instances show the involuntary nature of the PPC program, "although the PPC program policy clearly describes the program as voluntary." *Id*. at 6, ¶ 25.

Plaintiff asserts that "each defendant had an independent motive to force Plaintiff to participate in the PPC program and collectively encouraged, promoted, and/or participated in an overall objective to punish Plaintiff by any avai[l]able method within their control or authority for non-participation." *Id*. at 3, ¶ 3 (internal punctuation edited for clarity).  As a Muslim who has practiced Islam since 1997, Plaintiff claims these requirements violated his constitutional rights. *Id*. at 6, ¶ 26.

---

[3]No first name is provided for Defendant S. Brown.

## II.     Procedural History

Upon initial review of Plaintiff's original Complaint, Magistrate Judge Gordon Gallagher directed Plaintiff to file an amended complaint within 30 days of the order.  Docket #3.  Plaintiff filed the operative Amended Complaint[4] on December 26, 2014, alleging generally that Defendants, in their individual and official capacities,[5] forced him to participate in a religiously based program in a Colorado prison in violation of his constitutional rights.  Amended Complaint, docket #7.

Based on the above facts, Plaintiff's Amended Complaint asserts three causes of action: 1) a claim pursuant to 42 U.S.C. § 1983 for an Establishment Clause violation; 2) a claim pursuant to 42 U.S.C. § 1983 for a Free Exercise Clause violation; and 3) a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA").  *Id.* at 4-9.

As relief, Plaintiff seeks declaratory and other injunctive or equitable relief, an unspecified amount of compensatory, consequential and punitive damages, and any other relief deemed

---

[4]Plaintiff filed an additional amended complaint titled "First Amended Complaint" on April 1, 2015 (docket #25), which the Court struck (docket #29) for having been improperly filed without leave of the Court.  The Court indicated that if Plaintiff wished to further amend his pleadings, he must first seek leave of the Court.  Order, docket #33.  Plaintiff did not do so, thus, the operative complaint is that filed on December 26, 2014.  Amended Complaint, docket #7.  The Court further notes that while Plaintiff's general description of the "Nature of the Case" includes a reference to his Eighth and Fourteenth Amendment rights, Plaintiff's claims do not involve those amendments.  *Compare id.* at 3, ¶ 2, *with id.* at 4, 7, and 9.  The Court thus finds that Plaintiff has not pled Eighth or Fourteenth Amendment violations.

[5]Plaintiff indicates in each of his three claims that he brings the claim "against all Defendants in their individual capacities as employees and correctional officers of the Community Education Centers."  *See* docket #7 at 4, 7, and 9.  Additionally, Plaintiff's Request for Relief explicitly indicates his claims are against Defendants in both their individual and official capacities.  *Id.* at 13.  The Court therefore, construing Plaintiff's pleading liberally as is required and explained *supra*, interprets Plaintiff's claims to be against Defendants in both capacities.  The Court notes that the official capacity claims have not been addressed by Defendants in their motion, and Defendants do not inform the Court whether they are employed by a state entity.  The Court thus proceeds taking as true that Plaintiff's claims may be brought against Defendants in both capacities.

appropriate by the Court.  *Id*. at 13.

Defendants responded to Plaintiff's Amended Complaint by filing the present Motion to Dismiss.  Defendants argue that all three of Plaintiff's claims lack plausibility and fail to provide sufficiently detailed allegations to indicate a level of personal participation necessary for § 1983 claims and should be dismissed.  Motion to Dismiss, docket #24 at 10.

## LEGAL STANDARDS

### I.    Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge

the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.   A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted).   The present motion involves a facial attack on this Court's subject matter jurisdiction, although one raised *sua sponte* and not by Defendants' motion, as addressed below; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The Rule 12(b)(6) evaluation requires two prongs of analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 678–80.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic

recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

### III.   Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82

(10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

When a case is subject to dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

## I.    Mootness

Federal courts have jurisdiction through Article III of the Constitution to adjudicate cases and controversies.  U.S. Const. Art. III, § 2. cl. 1.  While the parties have not addressed this issue, mootness is a jurisdictional question that the Court may raise *sua sponte* to "ensure there is an Article III case or controversy" to adjudicate.  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).  Mootness is a threshold issue, because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction. *Beattie v. United States,* 949 F.2d 1092, 1093 (10th Cir. 1991).

> This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome.  When a party seeks only equitable relief, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects. In these circumstances, the party must "demonstrate a good chance of being likewise injured in the future." Consequently, we must look beyond the initial controversy and decide whether the present dispute is sufficiently immediate and real.

*McClendon*, 100 F.3d at 867 (internal citations and quotations omitted).

Prospective enforcement of federal rights is available only if a plaintiff's continued susceptibility to injury is reasonably certain.  *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).  "A claim for injunctive relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing

of any real or immediate threat that the plaintiff will be wronged again.'" *Sosa*, 654 F.3d at 1024 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations are based on speculation and conjecture.  *Sosa*, 654 F.3d at 1024.

In the declaratory judgment context, the mootness doctrine involves a question of whether the declaratory judgment settles some dispute that affects the behavior of the defendant toward the plaintiff.  *Id*. at 1025.  "Thus, where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint."  *Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)).  That a declaration might guide third parties, such as those not party to the lawsuit, in their future interactions with plaintiff is insufficient.  *Sosa*, 654 F.3d at 1026.  Under the federal Declaratory Judgment Act, Congress has authorized declaratory judgments only when there are actual cases or controversy.  *Id.* An actual case or controversy must exist at all stages of the case, not just when the complaint is filed.  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010).  Without such controversy, the opinion would be merely advisory; a federal court does not have the power to issue an advisory opinion nor to decide questions that cannot affect the rights of the litigants in the case before them. *Sosa,* 654 F.3d at 1025.

In the context of a suit by a prisoner seeking declaratory and injunctive relief against prison officials at a facility from which the prisoner is then transferred, and where the prisoner's claims relate solely to the conditions of the confinement at the facility at which the prisoner is no longer incarcerated, courts have concluded the prisoner's claims are moot.  *Id.* at 1027.  Courts have explained that equitable relief "would amount to nothing more than a declaration that (the prisoner) was wronged, and have no effect on the defendants' behavior towards him"; thus courts have routinely dismissed such penitentiary-specific claims as moot.  *Id.* (quoting *Green v. Branson*, 108

F.3d 1296, 1299 (10th Cir 1997)); *see also Abdulhaseeb*, 600 F.3d at 1311.  Important in the analysis has been whether prisoners sued defendants who were actually situated to effectuate any prospective relief that courts might see fit to grant.  *Sosa*, 654 F.3d at 1028.  If a prisoner were to sue, for example, the director of the prison system, despite transfer to a different facility his or her claims would not necessarily be moot.  *Id*.  Similarly, if the lawsuit were to challenge polices that apply in a generally uniform fashion throughout a prison system, courts have concluded that the prisoner's declaratory or injunctive claims are not moot, even after the prisoner has been transferred to another prison in that system.  *Id*.  However, when a prisoner sues only individual prison officials in their official capacities who work at the particular facility at which the plaintiff was housed at the time the alleged unconstitutional conduct purportedly occurred, and when those prison officials do not have the ability to effectuate any prospective relief for that plaintiff, the claims can be moot as to injunctive and declaratory relief.  *Id*.

In this case, the Court takes judicial notice of Plaintiff's change of address from CMRC in Colorado Springs, Colorado, where the events giving rise to this suit took place and where Plaintiff was placed when he filed his Amended Complaint, to a new placement in Canon City, Colorado, a move of which he informed the Court on April 8, 2015.   Notice of Change of Address, docket #28.  Later, Plaintiff transferred again – this time to Trinidad Correctional Facility in Model, Colorado – and on April 20, 2015, informed the Court of that move.   Notice of Change of Address, docket #35.  Plaintiff has brought suit against three Defendants, all of whom work within the one facility – CMRC – where the alleged events took place.   The Court presumes that Plaintiff remains within the same prison system as he continues to be held within the State of Colorado; however, no pleading or briefing asserts that Plaintiff is continually subjected to the injuries he alleges occurred at CMRC.

Therefore,  to  the  extent  that  Plaintiff  seeks  "declaratory  and  other  injunctive  and/or

equitable relief" (docket #7 at 13), the Court recommends that Plaintiff's claims for injunctive and declaratory relief against Defendants in their individual and official capacities be denied as moot.

## II.      Personal Participation

A § 1983 claim requires a plaintiff to show both the existence of a federally protected right and the deprivation of that right by a person acting under color of state law.  42 U.S.C. § 1983. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010). Section 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Id*. at 1201.  To establish personal participation, a plaintiff must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

Here, Defendants argue that Plaintiff has failed to establish the requisite personal participation for § 1983 claims, encouraging the Court to find the accusations too vague.  Further, Defendants rely heavily on *Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009) for the proposition that responding to "kites" and grievances is well established as insufficient to allege personal participation.  However, in *Gallagher*, the plaintiff brought suit against supervisors of the other defendants – the secretary of the prison system, the warden, and the deputy warden. *Id*. at 1069. There, the Tenth Circuit explained that the role of such supervisors rubber-stamping the denial of grievances is not enough to assert personal involvement in an alleged constitutional violation. *Id*. However, the court did not in *Gallagher* (or in any of the cases cited within *Gallagher* for that proposition) indicate that denial of grievances by prison officials interacting directly with inmates

11

could not be enough to show personal participation in a constitutional violation. Rather, the question is whether the defendant's *only involvement* was to deny the grievance appeal. *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (emphasis added).

In contrast, Plaintiff claims that "each defendant had an independent motive to force Plaintiff to participate in the PPC program and collectively encouraged, promoted, and/or participated in an overall objective to punish Plaintiff by any avai[l]able method within their control or authority for non-participation." Plaintiff alleges more than mere supervisory denial of grievances but rather that he expressed his religious objections to the named Defendants directly.

More specifically, with regard to Guerrero-Diaz, Plaintiff's case manager at CMRC, Plaintiff alleges:

- that he submitted a "kite" to her requesting a copy of the contract he was forced to sign upon entry into the facility, and she denied knowledge of the contract;

- that he had a meeting with her where he complained about the religious nature of the program, and she responded by saying the only way out is to refuse the program, which would result in a misconduct report and being put in segregation;

- that he submitted a "kite" to her again complaining about the religious nature of the program and received the same response.

As to S. Brown, the program director at CMRC, Plaintiff alleges:

- that he submitted a "kite" to Brown complaining about the religious nature of the program and seeking transfer to another facility, to which Brown responded that the program was not based on religion and Plaintiff would not be transferred; and

- that when Brown started working at the facility, Brown began a new requirement that the inmates stand to recite the "credo."

Finally, regarding Lehman, Plaintiff's unit manager at CMRC, Plaintiff alleges:

- that Plaintiff submitted a "kite" to him about the religious nature of the program and sought transfer to another facility, to which Lehman responded

12

that the program was not based on religion and refused to move him.[6]

Plaintiff additionally describes the environment in which these events took place:

- that CMRC is religiously based and founded by Christians based on Christian principles;

- that the program has "cardinal rules modeled after the Ten Commandments"; and

- that if he did not sign a contract agreeing to participate in the program he would be placed in disciplinary segregation.

The Court finds these assertions, taken as true, rise to the level of personal participation for each of the Defendants, as required in a § 1983 claim. Plaintiff has plausibly pled facts to show that Defendants required him to recite the "credo" and to stand when doing so, or to face punishment, all of which may have impermissibly burdened his freedom of religion and are enough to establish personal participation in a constitutional violation, as discussed more thoroughly *infra*.

Therefore, the Court recommends finding that Plaintiff has demonstrated the requisite personal participation by all three Defendants to survive a motion to dismiss.

## III.    First Amendment Claims

The religion clauses of the First Amendment state: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. As the Supreme Court has explained: "The first of the two Clauses, commonly called the Establishment Clause, commands the separation of church and state." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The Free Exercise Clause of the Constitution "requires government respect for, and

---

[6]The claim against Lehman may not survive in future stages of the litigation if Lehman's interactions were purely supervisory and related solely to denial of Plaintiff's "kite" with no further personal participation. However, the Court finds Plaintiff's pleadings regarding Lehman's denial that the program was based on religion and decision to refuse to move Plaintiff despite Plaintiff's constitutional concerns are enough for the claim to survive at this stage of the proceedings, taking Plaintiff's allegations as true.

noninterference with, the religious beliefs and practices of our Nation's people." *Id.*

Plaintiff asserts Defendants violated his constitutional rights under both clauses. The Court addresses each in turn.

A.   <u>The Establishment Clause</u>

The case long considered the benchmark in Establishment Clause precedent, *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), created a three-part test: (1) the statute must have a secular legislative purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster an excessive government entanglement with religion. *Lemon*, 403 U.S. at 612-13. More recently, however, *Lemon* has come under attack by individual Supreme Court Justices and commentators. *See, e.g., Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 551 (10th Cir. 1997) (pointing to *Cnty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 655 (1989)). Acknowledging *Lemon's* limitations, the Tenth Circuit now focuses its analysis on what it calls the widely accepted "endorsement test," concluding that "the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that 'religion or a particular religious belief is favored or preferred.'" *Bauchman*, 132 F.3d at 551 (quoting *Allegheny*, 492 U.S. at 592-93). The *Bauchman* court elaborated that the purpose component should evaluate whether the government's actual purpose is to endorse or approve of religion, while the effect component should evaluate whether a reasonable observer (one aware of the history and context of the community in which the conduct occurs) would view the practice as communicating a message of government endorsement or disapproval. *Bauchman*, 132 F.3d at 551-52.

To survive a motion to dismiss, the plaintiff must allege facts which, accepted as true, suggest a violation of either part of this analysis. *Id.* at 553. Regarding purpose, the Constitution does not require that the purpose of every government-sanctioned activity be unrelated to religion.

*Id.* (citing *Wallace v. Jaffree*, 472 U.S. 38, 105 (1985)).  To sustain an Establishment Clause claim, the plaintiff must allege facts that defendants have no "clearly secular purpose" for its actions. *Bauchman*, 132 F.3d at 553.  Alternatively, plaintiff may allege facts showing that despite a legitimate secular purpose, the defendants' actual purpose is to endorse or disapprove of religion. *Id.*  Regarding effect, plaintiff must allege facts to indicate that the activities have a principal or primary effect of advancing or endorsing religion.  *Id.*

Here, Plaintiff alleges that the purpose of the approach taken by Defendants is to indoctrinate incarcerated persons in Christian doctrine.  Plaintiff alleges he is forced to stand and recite a prayer called a "credo" twice daily despite his objections and adhere to rules modeled after the Ten Commandments – or be punished if he does not participate.  Defendants do not indicate any purpose – secular or otherwise – for Defendants' actions.  Taking Plaintiff's allegations as true, Plaintiff has plausibly pled an Establishment Clause violation and, as discussed *supra*, the requisite personal participation by Defendants for a § 1983 claim.

Therefore, the Court recommends denial of Defendants' motion to dismiss the Establishment Clause claim.

B.     The Free Exercise Clause

The Tenth Circuit has explained that inmates are entitled to a reasonable opportunity to pursue their sincerely held  religious beliefs.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  The Supreme Court has indicated, however, that inmates are subject to "necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  The Court has thus held that "a prison regulation impinging on inmates' constitutional rights ... is valid if it reasonably is related to legitimate penological interests."  *Id.* at 349.

For prisoner-plaintiff free exercise claims, the Tenth Circuit provides at two-step inquiry:

(1) the prisoner-plaintiff must show that a prison regulation substantially burdened his sincerely held religious beliefs; and (2) the prison-officials/defendants may identify whether there are legitimate penological interests that justify the impinging conduct. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).

A violation of the Free Exercise Clause is "predicated on coercion." *Lee v. Weisman*, 505 U.S. 577, 620 (1992). The controlling definition of "substantial burden" hinges on coercion as well: a substantial burden exists when the government coerces individuals into acting contrary to their religious beliefs. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). In contrast, incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, do not require government to bring forward a compelling justification for its otherwise lawful actions. *Lyng*, 485 U.S. at 450.

The plaintiff must state a cognizable claim that the government action burdens his own exercise of his or her religious beliefs – meaning, as defined in *Lyng*, that the government action coerces him or her into doing something contrary to his or her sincerely held religious beliefs. *Id*. For example, in *Moore v. Atherton*, 28 F. App'x 803 (10th Cir. 2001), a prisoner filed suit *pro se* with a § 1983 claim and free exercise claim. The prisoner, in the process of becoming Muslim, argued that being forced to hear the prayers of the prison chaplain praying with other inmates violated his free exercise rights. *Id*. at 806. The court indicated that "construed liberally, his complaint appears to raise a free exercise claim under the First Amendment." *Id*. However, the court found that the claimed failed, because "[plaintiff] has not made any argument as to how hearing Christian prayers burdens his own exercise of his religious beliefs." *Id*.

Here, Defendants concede that Plaintiff has a sincerely held religious belief. Motion to

Dismiss at 7.  Still, Defendants argue Plaintiff makes only vague and conclusory allegations that the program is based on religion and "cannot satisfy his burden to show that a prison regulation substantially burdened his sincerely held religious belief."  *Id*. at 7-8.  They further indicate that "[t]here are no allegations that he has been prevented from exercising his religion."  *Id*.

Like the *Moore* court, this Court agrees that Plaintiff's facts, construed liberally, could raise a free exercise claim.  Plaintiff argues Defendants forced him to attend religiously based programs, stand and recite Christian-based prayers, adhere to rules modeled after the Ten Commandments – and face punishment if he refused – despite those actions being in violation of his religious beliefs as a Muslim. Yet, the Court agrees with Defendants that Plaintiff fails in his Amended Complaint to plausibly allege with the required specificity how the program substantially burdens his religious beliefs or practice.  The Court thus must recommend dismissal of Plaintiff's free exercise claim. However, Plaintiff has presented argument in his Response (as opposed to the *Moore* plaintiff who made no such plausible argument at all) that could possibly nudge the claim forward.[7]  Thus, the Court recommends Plaintiff be given leave to amend this claim should he desire.[8]

---

[7]Plaintiff's Response includes assertions such as: "The Plaintiff is placed in the unenviable position of choosing between punishment by the Defendants and lo[]sing benefits available to other prisoners or observe his religious teachings, which puts substantial pressure on the Plaintiff to substantially modify his behavior and violate his beliefs.  The fact that Defendants have coerced Plaintiff to 'stand' to recite the credo prayer, observe their cardinal rules modeled after the Ten Commandments, and subjected him to signs that reference God and [B]ible quotes on every wall in the facility, clearly, forces Plaintiff to associate partners with Allah.  A central tenet of Islam is to not associate Partners with Allah, or the belief in any god other than Allah.  These allegations show that Plaintiff was prevented from exercising his religion."  Response at 8.

The Court has not relied on these facts in this recommendation other than to indicate that Plaintiff may be able to cure deficiencies. The additional argument appears to be consistent with those advanced in the Amended Complaint and do not add inconsistent allegations or theories. Thus, under *Hayes v. Whitman*, 264 F.3d 1017 (10th Cir. 2001), they might have been appropriate to consider; yet, in an abundance of caution, the Court has considered only those facts in the four corners of the operative complaint and thus recommends dismissal with leave to amend.

[8]Further, in light of Plaintiff's failure to show substantial burden, as discussed *supra*, the Court need not continue the analysis as to whether Defendants have identified legitimate penological interests that justify the impinging conduct, per *Boles*, or shown that the regulation is

## IV.    RLUIPA

Congress enacted RLUIPA to protect religious discrimination in two areas in which Congress found the record of religious discrimination particularly clear and compelling – in the context of land use, and in prisons, "where it is so easy for governmental officials with so much power over inmates' lives to deny capriciously one more liberty to those who have already forfeited so many others."

*Yellowbear v. Lampert*, 741 F.3d 48, 52-53 (10th Cir. 2014).  "While those convicted of crime in our society lawfully forfeit a great many civil liberties, Congress has (repeatedly) instructed that the sincere exercise of religion should not be among them – at least in the absence of a compelling reason."  *Id*. at 52.

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721.  To prove a RLUIPA claim, the plaintiff must carry at least two burdens, "and even then can lose if the government bears two of its own." *Yellowbear*, 741 F.3d at 53.

First, the plaintiff must show a sincerely held religious belief, and second, that such belief is substantially burdened by prison policy.  *Id*.  The statute protects much more, however, than merely the right to hold that belief privately; it protects religious exercises.  *Id*.  "'[T]he exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation."

---

reasonable based on the balancing factors the Supreme Court set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  In fact, Defendants do not cite any penological interests or attempt at this stage to defend the policies in any way.  *See generally* Motion to Dismiss, docket #24.

*Emp't Div. v. Smith*, 494 U.S. 872, 877 (1990).  Further, it is not the role of the courts to determine the relative value of a particular exercise to a religion.  *Yellowbear*, 741 F.3d at 54.  Instead, RLUIPA protects any exercise of a sincerely held religious belief: "When a sincere religious claimant draws a line ruling in or out a particular religious exercise, it is not for us to say that the line he drew was an unreasonable one."  *Id*. (internal quotations and citations omitted).

Second, the RLUIPA plaintiff must show that the government has imposed a substantial burden on that exercise of religion.  *Id*.  The Tenth Circuit has outlined how courts should test such burden, focusing on the coercive nature of the government's actions and not the merit of the plaintiff's beliefs:

> This court has explained that a burden on religious exercise rises to the level of being "substantial" when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief – for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise. ... As the third category shows, a burden can be "substantial" even if it does not compel or order the claimant to betray a sincerely held religious belief. ... Creating a situation that forces the religious claimant to choose between following the dictates of his faith and winning an important benefit or forgoing a considerable penalty is coercion enough.

*Id*. at 55.

The government still could show that the burden it has placed on the prisoner is based on a compelling governmental interest and is the least restrictive means of furthering that interest.  *Id*. (citing RLUIPA).  At the phase of a motion to dismiss, this is viewed in the light most favorable to the plaintiff, the non-movant.  *Abdulhaseeb*, 600 F.3d at 1311.

Here, Plaintiff has met his burden to plausibly plead that he has sincerely held religious beliefs that are burdened by the program.  As discussed *supra*, Plaintiff's facts, accepted as true at this phase, include his asking to have his sincerely held beliefs respected and being threatened with

discipline if he refused to participate.  This alone is enough to make dismissal of his RLUIPA claim inappropriate.

However, RLUIPA is not applicable to individual defendants, rather only to the government. *Stewart v. Beach*, 701 F.3d 1322, 1333 (10th Cir. 2012).  RLUIPA defines "government," in relevant part, as "(I) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (I); and (iii) any other person acting under color of State law."   42 U.S.C. § 2000cc–5(4)(A)(i)–(iii).

The *Stewart* court explained that Congress enacted RLUIPA pursuant to the Spending Clause of the Constitution.  *Stewart*, 701 F.3d at 1334 (stating that RLUIPA "applies in any case in which ... the substantial burden [on religious free exercise rights] is imposed in a program or activity that receives Federal financial assistance.").   The Tenth Circuit went on to note that while some courts have indicated a similarity between RLUIPA's "any other person acting under color of State law" and § 1983's "under color of" language (the latter of which can create a cause of action against state employees in their individual capacities), courts ultimately have decided that Spending Clause legislation "operates like a contract, and individual RLUIPA defendants are not parties to the contract in their individual capacities."  *Id*. at 1334-35.  The Spending Clause cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action.  *Id*.  The Tenth Circuit thus has held that "there is no cause of action under RLUIPA for individual-capacity claims."   *Id*. at 1335. Additionally, RLUIPA allows for injunctive and declaratory relief, both of which are moot for this Plaintiff, as discussed *supra*, because of his move to a new facility.  However, to the extent that damages are available for RLUIPA violations against defendants in their official capacities, the claim survives.

Therefore, the Court recommends that Defendants' motion to dismiss the RLUIPA claim

against Defendants in their individual capacities be granted but in their official capacities be denied.

## **CONCLUSION**

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that the Defendant's Motion to Dismiss Plaintiff's [Amended] Complaint [filed March 17, 2015; docket #24] be **GRANTED** as to injunctive and declaratory relief claims, as to the Free Exercise Clause claim, and as to the RLUIPA claim against Defendants in their individual capacities, but **DENIED** as to the Establishment Clause claim and the official capacity RLUIPA claim**.** Additionally, as to the Free Exercise Clause claim, the Court RECOMMENDS that Plaintiff be granted leave to amend.

Entered and dated at Denver, Colorado, this 18th day of May, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge